UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
2011 MAY -9  AM 9: 55

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | |
|---|---|
| MEXICAN AMERICAN LEGISLATIVE CAUCUS, TEXAS HOUSE OF REPRESENTATIVES (MALC) § § § § § | |
| Plaintiff § | SA11CA0361 OG |
| § | |
| v. § | CIVIL ACTION NO. |
| § | |
| STATE OF TEXAS, RICK PERRY, In His Official Capacity as Governor of the State of Texas, DAVID DEWHURST, In His Official Capacity as Lieutenant Governor of the State of Texas, and JOE STRAUS, In His Official Capacity as Speaker of the Texas House of Representatives. § § § § § § § § § § § | |
| Defendant § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

1. This is a redistricting lawsuit. This action is brought pursuant to Section 2 of the Voting Rights Act, 42 U.S.C. § 1973 et seq. and the Fourteenth and Fifteenth Amendments to the United States Constitution, 42 U.S.C. § 1983. Plaintiff brings this action requesting declaratory and injunctive relief against the State of Texas to challenge the population data being used for the State's 2011 redistricting efforts. The 2010 Census severely undercounts Latinos. The 2010 Census process and procedures resulted in substantial omissions of Latino population, particularly in the border region of Texas, including Cameron, Hidalgo, Starr, Webb and El Paso Counties, as well as urban areas in Dallas and Houston. Defendant State of Texas; and Defendants Perry, Dewhurst, and Straus (hereinafter collectively referred to as the "State Defendants") in the 2011 redistricting of the Texas House of Representatives, the Texas Senate,

1

the United State House of Representatives and the Texas State Board of Education, are using this defective data to determine the number of representatives that will be apportioned to Texas Counties as well as to determine compliance with the equal population requirements of the Texas and United States Constitutions. Use of this data will undervalue the vote of Texas Latinos and limit the number of majority Latino districts which can be drawn consistent with applicable constitutional and statutory requirements.

2. In addition, Plaintiff brings this action challenging the current election districts for the Texas House of Representatives, the Texas Senate, the United States House of Representatives in Texas and the State Board of Education because they currently contain substantial population disparities in violation of the equal population requirements of the United States Constitution.

3. Plaintiff also brings this action to challenge the manner in which the State Defendants are applying the redistricting requirement of the Texas Constitution regarding districting of the Texas House of Representatives, embodied in Article III, § 26, commonly referred to as the "whole county rule".

4. Finally, Plaintiff brings this action to challenge the state-wide, at-large, by place election system adopted and maintained by Defendants to elect Commissioners to the Texas Railroad Commission.

5. The State Defendants have commenced the redistricting process through the Texas Legislature and are proceeding with the use of the 2010 Census without modification, accommodation or consideration of the undercount of the Latino population. In addition, the State Defendants' have enforced Article III, § 26 in a manner that will diminish Latino voting strength. Enforcement of Article III, § 26 in the manner now employed by the State will

2

diminish the opportunity of Latino voters of Texas to participate in the political process by limiting the number of majority Latino districts that can be developed consistent with the requirements of the Voting Rights Act and the 14th and 15th Amendments of the United States Constitution. The State Defendants have also refused to consider single member district elections for the Texas Railroad Commission, thereby maintaining an election process that dilutes Latino voting strength in violation of Section 2 of the Voting Rights Act.

## I.     JURISDICTION

6.     Plaintiff's complaint arises under the Unites States Constitution and federal statutes. This court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1988.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

8.     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9.     Plaintiff requests convening of a three-judge court pursuant to 28 U.S.C. § 2284.

## II. PARTIES

10.    Plaintiff, Mexican American Legislative Caucus, Texas House of Representatives, (hereinafter MALC) is the nation's oldest and largest Latino legislative caucus. MALC is a non-profit organization established to serve the members of the Texas House of Representatives and their staffs in matters of interest to the Mexican American community of Texas, in order to form a strong and cohesive voice on those matters in the legislative process, including redistricting. Many of its members are elected from and represent constituencies in majority Latino districts and many of its members are Latino. Moreover, some of the members reside in over-populated Texas House Districts, Texas Senate Districts, United States House of Representative Districts,

and State Board of Education Districts. In addition its members have tried, unsuccessfully through the legislative process, to address the dilutive effect of the at-large, by place election system used to elect the Commissioners of the Texas Railroad Commission. Finally, its members participate in elections for the Texas Railroad Commission.

11. Defendant is the State of Texas. The State of Texas is a political subdivision covered under the provisions of the Voting Rights Act and responsible for the actions of its officials with regard to state-wide redistricting.

12. Defendant, Rick Perry is the Governor of the State of Texas. Under Article IV, Section 1, of the Texas Constitution, he is the chief executive officer of the Defendant State of Texas. He is sued in his official capacity.

13. Defendant, David Dewhurst is the Lieutenant Governor of Texas. Under Article IV, Section 16, of the Texas Constitution he is the President of the Texas Senate. He is sued in his official capacity.

14. Defendant, Joe Sraus is the Speaker of the Texas House of Representatives and is the presiding officer over the Texas House of Representatives. He is sued in his official capacity.

### III. FACTS

15. Plaintiff, MALC, is the nation's oldest and largest Latino legislative caucus. MALC is a non-profit organization established to serve the members of the Texas House of Representatives and their staffs in matters of interest to the Mexican American community of Texas, in order to form a strong and cohesive voice on those matters in the legislative process, including redistricting. Many of its members are elected from and represent constituencies in majority Latino districts and many of its members are Latino. Some of the members of MALC

4

reside in and represent districts that have population substantially greater than the ideal district size for those types of districts. Moreover, the members of MALC are registered voters in Texas and participate in state and local elections.

16. On or about February 17, 2011, the United States Department of Commerce and the United States Census Bureau released to the State of Texas the population data gathered as a result of the conduct of the 2010 census.

17. The information released to the State of Texas showed that the population of Texas had increased to 25,145,561 for 2010. The population of Texas, according to the 2010 Census, had increased over the decade by about 20% from the 2000 population of 20,851,820.

18. According to the 2010 Census, the Hispanic population of Texas grew to 9,460,921 from 6,669,666 in the 2000 census. This was an increase of about 42%. Moreover, according to the 2010 Census, Hispanic growth accounted for about 65% of the overall growth of Texas.

19. The numbers released to the State of Texas by the Census Bureau in February of 2011 are now being used to redistrict the Texas House of Representatives, the Texas Senate, United States House of Representatives and the Texas State Board of Education. This data has already been used to determine the apportionment of Texas House of Representatives to Texas Counties and to apportion United State House of Representative seats to Texas.

20. Historically, there has never been a completely accurate census in the United States. Moreover, the undercount of population has affected racial and ethnic minorities more than whites. That is, while many people simply were not counted, among certain groups, blacks and Latinos e. g., the level of undercount has been more severe than with whites. This disparate impact of the undercount is often referred to as the "differential undercount".

21. Historically American censuses result in more accurate counts for whites than they do for racial and ethnic minorities. *See:* National Research Council, "Modernizing the U.S. Census" 32, 33 (Barry Edmonston & Charles Schutze eds., 1995).

22. The Census Bureau has recognized that in Texas certain populations are more difficult to count than other populations. For example, people in poor urban communities are harder to count, as are people who live in poor suburban unincorporated subdivisions primarily located along the Texas-Mexican border and often referred to as "colonias". In Texas, this means an undercount of racial and ethnic minorities.

23. The traditional difficulties of accurately counting were compounded by the manner in which the Census Bureau actually conducted the census in Hidalgo County and other border area counties. After promoting and advertising and educating the community in these counties of the use of the mail-out, mail-in counting strategy the Census Bureau announced on the day the Census was to commence that this strategy would not be employed for the "colonias". The decision to forego one of the most relied upon strategies for the very population known to be hardest to count, after an extensive media and educational campaign to secure compliance, had a devastating effect on the ability of securing a complete count.

24. Upon information and belief, the resulting undercount of Latinos along the border region of Texas was between 4% and 8% of the population for the region.

25. The use of the inaccurate 2010 Census numbers for redistricting of Texas House of Representatives, Texas Senate, Texas State Board of Education and United States House of Representative districts will dilute the voting strength of Latino voters of Texas.

26. According to the 2010 Census, the Texas House of Representative districts have population disparities between the most and least populated district or a "top to bottom

6

deviation" of over 109%. This population disparity far exceeds the allowable deviation under the United States Constitution. The overpopulated districts for the Texas House of Representatives includes districts such as District 40 in Hidalgo County, with a deviation of over +28%, and District 36 in Hidalgo County, with a deviation of over +20%.

27.     According to the 2010 Census, the Texas Senate districts have population disparities between the most populated and least populated districts or "top to bottom" deviation of over 46%. This population disparity far exceeds the allowable deviation under the United States Constitutional requirement of one person, one vote.

28.     According to the 2010 Census, the Texas Congressional districts have population disparities between the most populated and least populated districts or "top to bottom" deviation of over 48%. This population disparity far exceeds the allowable deviation under the United States Constitution. The overpopulated districts for the United States House of Representatives includes districts such as District 15 in Hidalgo County, with a deviation of over +12%, and District 28 in Hidalgo County, with a deviation of about +22%.

29.     According to the 2010 Census, the Texas State Board of Education districts have population disparities between the most populated and least populated districts or "top to bottom" deviation of over 29%. This population disparity far exceeds the allowable deviation under the United States Constitution.

30.     The United States Supreme Court recently explained and articulated that the standard for compliance with the one person, one vote principle, does not provide a complete safe harbor, even when a plan has less than a 10% total deviation. Unless the jurisdiction can articulate a legitimate non-racial, non-political reason for its deviation, districts should be as equal in population as is practicable. *Cox v. Larios*, 159 L. Ed. 2d 831, 833 (2004).

7

31. The State's redistricting plans contains deviations that far exceed permissible limits under the United States Constitution.

32. Elections in Texas continue to be racially polarized.

33. Latinos generally vote as a group and are politically cohesive.

34. African Americans in Texas generally vote as a group and are politically cohesive.

35. Latinos and African Americans in Texas generally vote as a group and are politically cohesive.

36. Anglos in Texas generally vote as group, are politically cohesive and vote sufficiently as a block to defeat the preferred candidate of Latino and African American voters absent fair and equitable majority-minority single member districts.

37. According to the 2000, Census the total population of Harris County was 3,400,590. The ideal district size for Texas House of Representatives in the 2000 redistricting cycle was 139,012 persons. Therefore, the number of ideal districts for Harris County was 24.46.

38. In its efforts to comply with Article III, Section 26 of the Texas Constitution, Texas allocated 25 districts to Harris County for the 2001 redistricting.

39. According to the 2010 Census, the total population of Harris County is 4,029,459. The ideal district size in 2011 for the Texas House of Representatives, according to the 2010 Census, is 167,637 persons. Therefore, the number of ideal districts for Harris County is 24.41.

40. In its efforts to comply with Article III, Section 26 of the Texas Constitution, Texas allocated 24 districts to Harris County for the 2011 redistricting cycle.

41. A Harris County Texas House of Representative redistricting plan that allocates 24 districts to Harris County results in fewer Hispanic opportunity districts in Harris County than a plan allocating 25 districts to Harris County.

42. According to the 2000 Census, Hispanics in Harris County comprised about 33% of the total population. According to the 2010 Census however, Hispanics dominated the growth of the County and comprise over 40% of the County's population.

43. In the face of such tremendous Hispanic growth and when the County's over-all proportion of the State's population is nearly identical to the 2000 proportion when the State allocated 25 districts, allocating only 24 districts to Harris County is an intentional attempt to limit the number of districts in which Hispanics can elect candidates of their choice.

44. According to the 2010 Census, Hidalgo County now has a population of 774,769. In 2000, its population was counted at 569,463 persons by the U.S. Census Bureau. Thus according to the Census Bureau, Hidalgo County grew by over 200,000 persons, or over 36%. Hidalgo County is over 90% Hispanic.

45. According to the 2010 Census, Cameron County now has a population of 406,220 persons. In 2000, its population was counted at 335,227 persons by the U.S. Census Bureau. Thus, according to the Census Bureau, Cameron County grew by over 70,000 persons. Cameron County is over 88% Hispanic.

46. The total population of Cameron and Hidalgo Counties together is 1,180,989. Currently only six Texas House districts are contained wholly within the boundaries of Hidalgo and Cameron Counties. Since the ideal district size for Texas House districts is 167,637 people, seven Texas House districts could be drawn within the boundaries of Hidalgo and Cameron Counties, if the State adheres to the requirements of Article III, Section 26 of the Texas

Constitution. The 2010 Census demonstrates that a new Latino majority district could be drawn within the boundaries of Hidalgo and Cameron Counties. Instead, the State has chosen to violate Article III, Section 26 to avoid drawing a new Latino majority district in South Texas, and has drawn Hispanic population from Hidalgo and Cameron Counties into already existing Hispanic majority districts based in other counties.

47. Elsewhere across the State, the Defendants have chosen to enforce the provisions of Article III, Section 26 in such a fashion as to limit the number of Latino majority districts and to even eliminate an existing majority Latino district in Nueces County.

48. Defendants also employ redistricting gerrymandering techniques such as packing and over-populating minority districts in order to minimize minority opportunity districts.

49. The Texas Railroad Commission is composed of three commissioners elected in state-wide, at-large, by place elections for six year terms. Elections for the Railroad Commission are racially and ethnically polarized.

50. At least since 1891, only three Latinos have served on the Railroad Commission. In addition, in the last twenty years every candidate of choice of Latino voters has been defeated.

51. In a fairly drawn single member districting plan of three districts for the Texas Railroad Commission, one district can be developed with a majority Latino citizen voting age population.

52. Latinos and African Americans in Texas continue to suffer the effects of historical discrimination in the areas of education, income, and housing. In addition, primary elections in Texas, including elections for Texas Railroad Commission, continue the use of

10

majority vote requirements. Elections in Texas still require the use of place system and majority vote. For example elections for Railroad Commissioner use a place system, and are conducted on a state-wide, at-large basis. Primaries in Texas require majority vote to secure election. In addition racially polarized voting continues to infect elections at all levels of government. The state continues to use large election districts for Texas Railroad Commissioners and for Texas State Board of Education. Texas has a long history of discrimination against minorities in voting. Finally, Latinos in Texas continue to be under-represented in the Texas House, the Texas Senate, the Texas delegation to the United State House of Representative, the State Board of Education, and the Texas Railroad Commission.

### FIRST CLAIM FOR RELIEF – DISCRIMINATORY RESULT

53.     The allegations contained in paragraphs 1 through 52 are alleged as if fully set forth herein.

54.     Plaintiff's cause of action arises under Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. §1973. Since the State Defendants have failed to consider the effect of the undercount of Latinos as contained in the 2010 Census and are proceeding with the 2011 redistricting using the 2010 Census without modification or adjustment, the State Defendants are in violation of the Voting Rights Act. The use of the 2010 Census in the 2011 redistricting cycle violates the rights of Plaintiff as secured by Section 2 of the Voting Rights Act, 42 U.S.C. §1973.

## SECOND CLAIM FOR RELIEF – INTENTIONAL DISCRIMINATION AND DISCRIMINATORY EFFECT

55. The allegations contained in paragraphs 1 through 52 are alleged as if fully set forth herein.

56. The election practices and procedures used to apportion house districts to Nueces, Harris, Dallas, Tarrant, Cameron and Hidalgo Counties and across the State, was done in such a fashion and with the intent to disadvantage Hispanic voters and resulted in a discriminatory effect on Latino voters in Texas. Based on the totality of circumstances, the political process used by the State Defendants to allocate Texas House seats to Texas Counties and Nueces, Harris, Dallas, Tarrant, Hidalgo and Cameron Counties in particular, violates the rights of Latino voters in violation of Section 2 of the Voting Rights Act as well as the 14th and 15th Amendments of the United States Constitution and 42 U.S.C. § 1983.

57. In addition, the Texas House districting plan adopted by the Texas House of Representatives has a total or top to bottom deviation of 9.9%. This deviation was achieved by over-populating Latino majority districts, to avoid drawing new Latino majority districts and to gain political advantage. Therefore, the manipulation of the population deviation to 9.9% has a discriminatory effect on Latino voters and violates Section 2 of the Voting Rights Act, 42 U.S.C. § 1973.

## THIRD CLAIM FOR RELIEF – ONE PERSON ONE VOTE

58. The allegations contained in paragraphs 1 through 52 are alleged as if fully set forth herein.

12

59. Currently all four state-wide redistricting plans exceed permissible population variances between the least populated district and the most populated district. The implementation of such variances or deviations from ideal population by Defendants Perry, Dewhurst and Straus violate the rights of all voters and persons as guaranteed by the one person, one vote principle embodied within 14th Amendment of the United States Constitution and protected by 42 U.S.C. § 1983.

60. In addition, the Texas House districting plan adopted by the Texas House of Representatives has a total or top to bottom deviation of 9.9%. This deviation was achieved by over-populating Latino majority districts, to avoid drawing new Latino majority districts and to minimize the opportunity of Latino voters to participate in the political process. There is no legal justification for maintaining a deviation of 9.9% when there is such an impact on Latino voting strength. This 9.9% deviation violates the one person one vote principle of the 14th Amendment, of the United States Constitution as protected by 42 U.S.C. § 1983.

## FOURTH CLAIM FOR RELIEF – SECTION 2 VIOLATION, TEXAS RAILROAD COMMISSION

61. The allegations contained in paragraphs 1 through 52 are alleged as if fully set forth herein.

62. The current at-large, state-wide, by place voting system used by the Defendants to elect Commissioners to the Texas Railroad Commission dilutes the voting strength of Latino voters. Elections are polarized; Latino preferred candidates are routinely defeated; there has been a paucity of Latino Commissioners; and a fairly drawn single member district can result in one district with a majority Latino citizen voting age population. These factors together with a

review of the totality of circumstances, shows that the at-large election system used to elect commissioners to the Texas Railroad Commission violates Section 2 of the Voting Rights Act, 42 U.S.C. § 1973.

63. With respect to the first, second, third and fourth claims for relief, this is also an action for declaratory judgment and preliminary and permanent injunctive relief instituted pursuant to 42 U.S.C. § 1973, 42 U.S.C. § 1983 and 28 U.S.C. § 2001.

64. With respect to the first, second, third and fourth claims for relief, Plaintiff seeks a declaration that the actions of the State Defendants in the 2011 redistricting cycle violate their rights as secured by the Voting Rights Act and the 14th and 15th Amendments of the United State Constitution and that the Defendants, in maintaining an at-large method of election for the Texas Railroad Commission violates the rights of Plaintiff as secured by the Voting Rights Act. Plaintiff also seeks to enjoin any further use of the current plans for the Texas House, Texas Senate, United States House of Representatives, and State Board of Education, as well as the use of at-large elections for the Texas Railroad Commission.

## BASIS FOR EQUITABLE RELIEF

65. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment and injunctive relief is their only means of securing adequate redress from all of the Defendants' unlawful practices.

66. Plaintiff will continue to suffer irreparable injury from all of the Defendants' intentional acts, policies, and practices set forth herein unless enjoined by this Court.

## PRAYER

Plaintiff respectfully prays that this Court enter Judgment granting Plaintiff:

A. A declaratory judgment that State Defendants' actions violate the rights of Plaintiff as protected by Section 2 of the Voting Rights Act, 42 U.S.C. § 1973 et seq. and the Defendants Perry, Dewhurst, and Straus violate the rights of Plaintiff as protected by the 14th and 15th Amendments to the United States Constitution and 42 U.S.C. § 1983;

B. Preliminary and permanent injunctive relief requiring State Defendants, their successors in office, agents, employees, attorneys and those persons acting in concert with them and/or at their discretion - to develop redistricting plans that do not dilute Latino and minority voting strength for the State Board of Education, the Texas House of Representatives, the United States House of Representatives, the Texas Senate and to implement a districting plan for the Texas Railroad Commission and also enjoining and forbidding the use of the current congressional, state legislative, and State Board of Education redistricting plans and the at-large method of election utilized for Texas Railroad Commission elections.

C. An order requiring all Defendants to comply with Sections 2 and with the Section 5 preclearancce requirements of the Voting Rights Act;

E. The costs of this suit and reasonable attorneys fees and litigation expenses, including expert witness fees and expenses, pursuant to 42 U.S.C. §§ 1973l(e) and 1988.

F. An order of this Court retaining jurisdiction over this matter until all Defendants have complied with all orders and mandates of this Court; and

G. Such other and further relief as the Court may deem just and proper.

DATED: May 9, 2011                                Respectfully Submitted,

                                                  JOSE GARZA
                                                  LAW OFFICE OF JOSE GARZA
                                                  7414 Robin Rest Dr.
                                                  San Antonio, Texas 78209
                                                  210-392-2856
                                                  garzpalm@aol.com

15

JOAQUIN G. AVILA
LAW OFFICE
P.O. Box 33687
Seattle, Washington 98133
Texas State Bar # 01456150
(206) 724-3731
(206) 398-4261 (fax)
jgavotingrights@gmail.com

By: *[signature]*
JOSE GARZA

Attorneys for the Plaintiff