**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| MEXICAN AMERICAN LEGISLATIVE | § | |
| CAUCUS, TEXAS HOUSE OF | § | |
| REPRESENTATIVES (MALC), | § | |
| *Plaintiff*, | § | CAUSE NO. 11-cv-00361-OLG-JES-XR |
| | § | |
| v. | § | |
| | § | |
| STATE OF TEXAS, *et al.*, | § | |
| *Defendants*. | § | |

---

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

Defendants State of Texas, Rick Perry, in his official capacity as Governor of the State of Texas, David Dewhurst, in his official capacity as Lieutenant Governor of the State of Texas, and Joe Straus, in his official capacity as Speaker of the Texas House of Representatives, (collectively, "Defendants") file this Motion to Dismiss Plaintiff Mexican American Legislative Caucus's ("MALC") First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTION

This lawsuit is one of more than ten cases filed in Texas's state and federal courts purporting to challenge some aspect of the State's efforts to redraw its electoral districts in the wake of the 2010 decennial census. The instant motion requires this Court to determine whether MALC's lawsuit brought pursuant to the Voting Rights Act, 42 U.S.C. §§ 1973, 1973c, and the Fourteenth and Fifteenth Amendments to the United States Constitution should be dismissed in its entirety. MALC asserts the following claims in its complaint: (1) the use of inaccurate data from the 2010 census that purportedly undercounts Hispanics in Texas violates Section 2 of the

Voting Rights Act; (2) the Texas House redistricting plan was created with the intent to disadvantage Hispanic voters and will have a discriminatory effect on Hispanic voters in violation of Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments of the United States Constitution; (3) the population deviation of 9.9% in the recently enacted Texas House plan has a discriminatory effect on Hispanic voters in violation of Section 2 of the Voting Rights Act and the Fourteenth Amendment; (4) the existing electoral districts of the Texas House and the United States House of Representatives violate the one-person, one-vote principle embodied in the Fourteenth Amendment of the U.S. Constitution; (5) the recently enacted Texas House plan violates Section 5 of the Voting Rights Act because it is retrogressive and has not been precleared; and (6) the current at-large, statewide voting system used to elect Commissioners to the Texas Railroad Commission dilutes the voting strength of Hispanic voters in violation of Section 2 of the Voting Rights Act.

This Court should dismiss MALC's claims for the following reasons. *First*, MALC's claims fall outside this Court's subject matter jurisdiction. MALC lacks standing to pursue any of its claims because it fails to identify a concrete harm it has suffered as a result of the redistricting plans and how this Court can redress MALC's purported injuries by granting the requested relief. As a result, MALC has failed to show how it satisfies the constitutional requirements for standing. *Second*, this Court should dismiss MALC's claims in their entirety because it has failed to state a case or controversy with the individual Defendants. MALC has not alleged any facts to show how the Governor, Lieutenant Governor, or the Speaker of the House have caused any redressable injury to MALC or how these individuals are the proper parties to redress MALC's purported injuries. *Third*, MALC has failed to demonstrate how this Court has jurisdiction over its claim under Section 5 of the Voting Rights Act given that the

United States District Court for the District of Columbia has exclusive jurisdiction over such challenges. **Finally**, MALC has failed to plead sufficient facts in its complaint to state viable claims under Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments. MALC cannot amend its complaint to offer any such allegations because no supporting evidence exists. As a result, dismissal with prejudice is the appropriate remedy. Accordingly, and for the reasons stated below, this Court should grant the motion to dismiss and dismiss all of MALC's claims with prejudice.

<u>**ARGUMENTS & AUTHORITIES**</u>

A. **The Legal Standard.**

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citation omitted).

"To survive a Rule 12(b)(6) motion, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to

relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555).  Although a court accepts all well-pleaded facts as true, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Id*.

**B.  This Court Lacks Subject Matter Jurisdiction Over MALC's Claims.**

    **1.  *MALC Cannot Demonstrate Associational Standing.***

This Court should dismiss this suit because MALC cannot satisfy the requirements for associational standing to pursue its claims under the Voting Rights Act or the Fourteenth and Fifteenth Amendments to the United States Constitution.  Associational standing is a three-part test: (1) the association's members would independently meet the Article III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members.  *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

Here, MALC cannot meet the first associational standing requirement because the individual members of MALC, who are legislators, have not suffered an injury in fact.  In its complaint, MALC alleges that "many of its members are Latino" and "[s]ome of the members of MALC reside in and represent districts that have substantially greater than the ideal district size for those types of districts."   First Amended Complaint ("Complaint") ¶ 15.  MALC's allegations, however, do not establish how any of its individual members will personally suffer vote dilution or intentional discrimination as a result of the reapportionment of the Texas House

or congressional districts.  MALC's allegations only suggest that its members are raising claims on behalf of their constituents, and such allegations do not establish standing.[1]  *See Quilter v. Voinovich*, 981 F. Supp. 1032, 1038 (N.D. Ohio 1997) (holding that because the board members' alleged injury "resulted from the majority's decision to choose a course of action that the outnumbered members thought to be unconstitutional," finding standing "would invite any legislator who was outvoted on a particular measure to bring a constitutional challenge to that measure merely because he or she had not prevailed"); *City of Philadelphia v. Klutznick*, 503 F. Supp. 663, 672 (E.D. Pa. 1980) ("A legislative representative suffers no cognizable injury, in a due process sense or otherwise, when the boundaries of his district are adjusted by reapportionment. . . . While the voters in a representative's district have an interest in being represented, a representative has no like interest in representing any particular constituency.  It is only the voters, if anyone, who are ultimately harmed.").  To the extent MALC claims that its members reside in and are voters in certain districts that will be affected by the reapportioned districts, MALC still cannot demonstrate standing as its complaint is devoid of any such allegations identifying a cognizable injury.

Likewise, MALC does not have standing to raise a claim regarding the composition of the Texas Railroad Commission.  MALC alleges that its members "have tried, unsuccessfully through the legislative process, to address the dilutive effect of the at-large, by place election system used to elect the Commissioners of the Texas Railroad Commission" and participate in elections.  Complaint ¶ 15.  It is well-established that legislator standing is strictly "limited to instances of vote nullification with regard to a specific legislative action."  *Voinovich*, 981 F.

---

[1] Significantly, even the League of United Latin American Citizens, which has moved to intervene in this lawsuit, argues that its presence is necessary because MALC is comprised of "elected officials" who only have an "interest in the process which is distinctly different from that of the Latino electorate."  *See* Docket No. 8, Motion to Intervene, at 7.

Supp. at 1038 (citing *Raines v. Byrd*, 521 U.S. 811 (1997)); *Korioth v. Brisco*, 523 F.2d 1271, 1278 (5th Cir. 1975) (denying standing to a legislator who cast a minority vote against enacting a statute because falling on the losing side of the vote did not impede his legislative power).  As a result, because MALC claims that it has been ineffective through the legislative process in changing the Texas Railroad Commission election regime, this Court lacks jurisdiction over this claim.

MALC also cannot establish the interests it seeks to protect in this lawsuit are germane to the purpose of the organization.[2]  Although the allegations in MALC's complaint center on the fact that the voting strength of Hispanics is being diluted under the Texas House plan, MALC does not exist to advance the interests of its constituents outside of the legislative process.  In fact, its stated purpose is to "serve the members of the Texas House of Representatives and their staffs in matters of interest to the Mexican-American community of Texas, in order to form a strong and cohesive voice on *those matters in the legislative process, including redistricting*." Complaint ¶ 10 (emphasis added).  Furthermore, because MALC does not purport to represent its members as individual voters, it cannot rely on its members' interests as voters in the electoral process to demonstrate standing.  Accordingly, MALC has failed to demonstrate how it satisfies the second requirement for associational standing.

### 2.   *MALC Cannot Demonstrate Direct Standing.*

MALC also cannot demonstrate that it has standing to assert claims involving the current apportionment of legislative and congressional districts.  To establish constitutional standing, the

---

[2] To the extent that MALC alleges that the votes of African-Americans have been diluted as a result of the current election scheme of the Texas Railroad Commission, it does not have standing to raise such a claim.  *See, e.g.,* Complaint ¶¶ 32-34, 50.  MALC expressly states that it has been established to aid the members of the Texas House of Representatives to address "matters of interest to the Mexican American community of Texas."  Complaint ¶ 10.  MALC has not asserted any facts which suggest that protecting the interests of African-American voters is germane to the interests of the organization.  As a result, MALC cannot satisfy the second element of the associational standing test to bring such claims on behalf of African-American voters.

plaintiff must "demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  An injury in fact requires that there be "a concrete and imminent invasion of a legally protected interest that is neither conjectural nor hypothetical." *Lujan*, 504 U.S. at 560.  Although it complains about the apportionment of existing legislative and congressional districts, MALC has not alleged that the State intends to conduct elections using the current districts, and there is no reason to believe that it will do so.  The Texas House plan has been approved by the Texas Legislature and signed into law by the Governor, thereby enacting a redistricting law that reapportions the districts.  Additionally, the Texas Legislature has approved a plan to reapportion the existing congressional districts, and this plan has been sent to the Governor for his approval.  *See Mayfield v. Texas*, 206 F. Supp. 2d 820, 823 (E.D. Tex. 2001) (holding that the plaintiffs had not suffered an injury in fact because "there is no threat that an election will be held with the current districting scheme in place, and there is no reason to believe at this time that the Texas Legislature will fail to correct any malapportionment before the next election process begins").  As a result, MALC has failed to show that it has suffered an injury in fact.[3]

With respect to its claim that Defendants are using inaccurate 2010 Census data in the redistricting process, MALC has also failed to establish a causal link between its injury and Defendants' conduct.  To meet the traceability element of standing, a plaintiff must establish "a 'fairly traceable' causal link between [its] injury and the defendant's conduct."  *Cadle Co. v.*

---

[3] MALC's claim regarding the current apportionment of the Texas House districts is also moot in light of the fact the proposed plan has been enacted into law on June 19, 2011.  "A controversy becomes moot where, as the result of intervening circumstances, there are no longer adverse parties with sufficient legal interest to maintain the litigation . . . ."  *In re Scruggs*, 392 F.3d 124, 128 (5th Cir. 2004) (quoting *Chevron, U.S.A., Inc. v. Trailour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993)).

*Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009) (quoting *Lujan*, 504 U.S. at 560–61).   MALC's claims are based on the alleged inaccurate procedures employed by the United States Census Bureau during the 2010 Census which, in its view, has resulted in a substantial undercount of Hispanics in certain regions of Texas.  *See* Complaint ¶¶ 16-25.

MALC cannot meet the casual link requirement because it fails to show how an alternative population count would have affected the resulting reapportionment.  *See Nat'l Law Center on Homelessness and Poverty v. Kantor*, 91 F.3d 178, 183 (D.C. Cir. 1996) ("To demonstrate that their injury was caused by the S-Night count [of homeless persons], appellants must show that the homeless were improperly undercounted by the S-Night methodology *as compared to a feasible, alternative methodology*.") (citing *Franklin v. Massachusetts*, 505 U.S. 788, 802 (1992)).  MALC does not assert that the population could be counted by any method superior to the procedures used by the Census Bureau.  Moreover, it does not present an alternative approach that, taking into account all the unique factors that make counting individuals in the border and urban regions of Texas inherently difficult, promises any significantly different result.  *See Franklin*, 505 U.S. at 802 (challenger to the allocation of overseas employees among states had "neither alleged nor shown . . . that Massachusetts would have an additional Representative if the allocation had been done using some other source of 'more accurate' data" and accordingly did not have standing "to challenge the accuracy of the data used in making that allocation").[4]

---

[4]  The United States Constitution expressly assigns to Congress the duty of conducting a decennial census.  U.S. CONST. amend. XIV, § 2; *see also id.* art. I, § 2 (directing Congress to conduct an "actual Enumeration" every ten years following the initial census).  Neither the State nor its officers have the power to control the United States government's performance of its constitutional duty.  Because MALC does not appear to allege that Defendants are somehow responsible for the alleged defects in the 2010 Census, it cannot demonstrate standing as any alleged injury is not traceable to Defendants.  *See City of Detroit v. Franklin*, 4 F.3d 1367, 1373 (6th Cir. 1993) (holding that plaintiffs lacked standing on claim that the Census Bureau's failure to adjust resulted in underrepresentation of the City of Detroit in state legislative districts because the state's decision to use unadjusted census data was "an

Similarly, MALC has failed to show that any injury it may have suffered due to the use of the allegedly inaccurate 2010 Census numbers can be redressed by the injunctive or declaratory relief it requests.  MALC does not explain what it wants the Court to do about the allegedly inaccurate Census count, nor can it show that a new redistricting plan (presumably based on some alternative population count or a corrected Census) will somehow improve its position.  Indeed, any effort by MALC to allege that a redistricting plan would be different or that alleged minority voting strength would not be diluted if an accurate Census count were used is nothing more than pure speculation.  *See, e.g.*, *Kaplan v. County of Sullivan*, 74 F.3d 398, 399–400 (2d Cir. 1996) (holding that the plaintiff lacked standing to challenge the exclusion of prisoners from the county's apportionment base because he could not show that including prisoners would strengthen his vote).  As the United States Court of Appeals for the District of Columbia has observed in rejecting the same argument as a matter of law:

> [A]ppellants do not demonstrate that our order will redress their injury.  They do not even ask that the alternative methodologies suggested in their affidavits would be employed in a recount.  Rather, they would have us appoint a commission to formulate a better methodology.  We can hardly assume that a commission of as-yet unnamed persons, using as-yet unidentified methodologies, will devise a better homeless count that will redound to appellants' benefit.

*Nat'l Law Center on Homelessness and Poverty*, 91 F.3d at 183; *see also Federation for Am. Immigration Reform v. Klutznick*, 486 F. Supp. 564, 570-76 (D.D.C. 1980) (holding that plaintiffs lacked standing because they could not show that adjusting the Census to exclude illegal aliens would result in more representation for their home states).  Because MALC has made no effort to show that a favorable decision will redress its purported injuries, this Court should dismiss its challenge to use of the 2010 Census in the redistricting process for lack of jurisdiction.

---

independent act breaking the chain of causation between the challenged actions of the Census Bureau . . . and the injury to the plaintiffs").

**3.** ***This Court Should Dismiss MALC's Claim Under Section 5 Of The Voting Rights Act For Lack Of Jurisdiction.***

This Court should dismiss MALC's claim under Section 5 of the Voting Rights Act because (1) this Court lacks jurisdiction over such claims and (2) private parties lack standing to bring substantive Section 5 claims. The United States District Court for the District of Columbia has exclusive jurisdiction to determine whether a proposed voting change does or does not have a discriminatory purpose or effect under Section 5 of the Voting Rights Act. *See, e.g., Reaves v. United States Dep't of Justice*, 355 F. Supp. 2d 510, 513 (D.D.C. 2005). Private citizens may bring "coverage suits" seeking a declaratory judgment finding that a proposed voting change is subject to preclearance under Section 5. They may also seek an injunction against implementation of an unprecleared change. Coverage suits, however, do not include the question of whether the proposed change has a discriminatory purpose of effect. *Lopez v. Monterey County*, 519 U.S. 9, 23 (1996) (citation omitted) ("On a complaint alleging failure to preclear election changes under § 5, that [three-judge district court] lacks authority to consider the discriminatory purpose or nature of the changes . . . ."); *see also Reaves*, 355 F. Supp. 2d at 513 ("Such 'coverage suits' by private citizens must be heard by three-judge courts, . . . but because they address only the question of whether a particular enactment is subject to the Voting Rights Act and not the 'difficult substantive issue' of whether it has a discriminatory purpose or effect, the United States District Court for the District of Columbia does not have exclusive jurisdiction over such suits.") (citing *Allen v. State Bd. of Elections*, 393 U.S. 544, 563 (1969)). As a result, MALC's claim under Section 5 is jurisdictionally barred.

Alternatively, this Court should dismiss MALC's claim under section 5 of the Voting Rights Act because it is not ripe for adjudication. It is well-settled that a court should dismiss a case for lack of ripeness "when the case is abstract or hypothetical." *New Orleans Pub. Serv.,*

*Inc. v. Counsel of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987).  "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Texas v. United States*, 523 U.S. 296, 300 (1998).  MALC claims that the plan adopted for the Texas House violates Section 5 of the Voting Rights Act because it "has not *yet* received the necessary approval that is required" and is "*unlikely* to be approved."  Complaint ¶ 60 (emphasis added).  MALC's claim is premature as it depends on future contingencies that may or may not occur.  Defendants have not initiated the preclearance process for the Texas House plan and there is no basis at this time for this Court to conclude that the Department of Justice or the United States District Court for the District of Columbia will not approve the plan. Defendants have not taken any actions that would suggest Texas intends to conduct its elections under the newly passed plans without first receiving preclearance.  Accordingly, this Court should dismiss this claim for lack of jurisdiction.

### 4.  *MALC Has Failed To Allege A Case Or Controversy With The Named Defendants.*

Even assuming that MALC can meet the standing requirements, no injury has been, or could be, caused by the named Defendants.  Article III jurisdiction is lacking where a plaintiff sues a state official who is without power to take the complained of action, and whose actions have not caused, or could not cause, any injury to him.  *See Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (plaintiffs failed to satisfy Article III standing with respect to the Governor, who had no authority to enforce the allegedly unconstitutional state statute).  Further, injunctions against state defendants have been held to be "utterly meaningless" when the named parties "have no power to redress the asserted injuries."  *Id*. at 427.  Although the named Defendants in this suit are the Governor, Lieutenant Governor, and Speaker of the House, MALC offers no allegations showing how any of these individuals have caused any injury to it.  Further, MALC

has no case or controversy with these named Defendants as none of them are responsible for enforcing the injunctive relief MALC requests.  Indeed, this Court could not *require* Texas's Legislature to redraw new districts if it finds MALC's claims to be meritorious.  *See Printz v. United States*, 521 U.S. 898, 912 (1997) ("[S]tate legislatures are *not* subject to federal direction.") (citation omitted) (emphasis in original).  Because this Court cannot require the Texas Legislature to remedy any unconstitutional aspect of its redistricting plan, complete relief can be afforded by this court without the presence of the Governor, Lieutenant Governor, or Speaker of the House.  *Larios v. Perdue*, 306 F. Supp. 2d 1190, 1199-1200 (N.D. Ga 2003).  As a result, MALC has failed to satisfy the redressability prerequisite for Article III standing as the named Defendants are not the proper parties to redress MALC's purported injuries.

### 5.  *The Eleventh Amendment Bars § 1983 Claims Against The State.*

MALC's claims against the State of Texas brought pursuant to § 1983 are barred by the Eleventh Amendment to the United States Constitution.  The Eleventh Amendment to the United States Constitution bars private suits in federal court against states, unless the state has waived, or Congress has abrogated, the state's sovereign immunity.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998); *see also* U.S. CONST. amend. XI.  It is well established that Congress has not abrogated the states' sovereign immunity under section 1983.  *See Quern v. Jordan*, 440 U.S. 332, 340-45 (1979); *Aguilar*, 160 F.3d at 1054.  As a result, the State is immune from MALC's § 1983 claims.[5]

---

[5]  MALC's § 1983 claims against the State of Texas should also be dismissed for failure to state a claim given that the State is not a "person" subject to suit under § 1983. *See, e.g.*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989).

**C. Dismissal Is Necessary Under Rule 12(b)(6) Because MALC Has Failed To State A Claim Upon Which Relief Can Be Granted.**

*1. MALC's Claim That Defendants Used Inaccurate Census Figures Should Be Dismissed.*

This Court should dismiss MALC's claim regarding the challenge to the State's use of inaccurate 2010 Census data in the apportionment of the Texas House and congressional districts. Although MALC claims that procedures used in the 2010 Census resulted in an undercount of racial and ethnic minorities in certain regions of Texas, it has failed to allege sufficient facts to refute that the 2010 Census is presumptively correct. The Fifth Circuit has expressly recognized that "[t]he Census is presumptively correct and typically must be rebutted with clear and convincing evidence." *Fairley v. Hattiesburg*, 584 F.3d 660, 674 (5th Cir. 2009); *Valdespino v. Alamo Heights I.S.D.*, 168 F.3d 848, 853-54 (5th Cir. 1999) (recognizing that for redistricting purposes, the census figures are presumed accurate until proven otherwise); *see also Karcher v. Daggett*, 462 U.S. 725, 737 (1983) (holding that in redistricting a state cannot "correct" census figures "in a haphazard, inconsistent manner"). Indeed, the Supreme Court has declared that "[a]dopting any standard other population equality, using the best census data available . . . would subtly erode the Constitution's ideal of equal representation." *Karcher*, 462 U.S. at 731. MALC has failed to offer any such facts in its complaint, and its statements that the 2010 Census is inaccurate or defective amount to nothing more than legal conclusions (and pure speculation) that are insufficient under *Twombly* and *Iqbal* to properly state a claim.[6]

---

[6] Any argument by MALC that this Court should not dismiss this claim is without merit. Notably, MALC has taken the position that such a claim should be dismissed in another related proceeding pending in the United States District Court for the Eastern District of Texas. *See Teuber, et al. v. State of Texas, et al.*, Civ. A. No. 4:11-cv-00059-RAS (E.D. Tex. filed Feb. 10, 2011). As an intervenor in that suit, MALC joined in a motion to dismiss the plaintiffs' claim regarding the State's use of inaccurate Census numbers in the redistricting process. MALC specifically stated that the plaintiffs failed to allege facts that support modifying the 2010 Census because such figures "are presumed accurate until proven otherwise." Defendant Intervenor's Response in Support of Defendant Boyd Richie's Motion to Dismiss at 6, *Teuber, et al. v. State of Texas, et al.*, Civ. A. No. 4:11-cv-00059-RAS, Doc. No. 19 (E.D. Tex. filed Apr. 12, 2011).

Further, with respect to any claim regarding Defendants' use of the 2010 Census data for the reapportionment of congressional districts, MALC fails to properly state a claim.  At least one federal court has held that pursuant to Article I, Section 2 of the United States Constitution, states must use total federal census figures to apportion congressional districts.  *Travis v. King*, 552 F. Supp. 554, 571 (D. Haw. 1982); *cf. Burns v. Richardson*, 384 U.S. 73, 92 (1966) ("The decision to include or exclude any such group [of aliens, transients, temporary residents, or persons denied the vote for conviction of crime] involves choices about the nature of representation with which we have been shown no constitutionally founded reason to interfere."). Given that Texas used the 2010 Census figures released by the United States Census Bureau in reapportioning the congressional districts, MALC cannot demonstrate that Texas was required or needed to use another set of population data.

### 2.  MALC's Claim Under Section 2 Of The Voting Rights Act Should Be Dismissed.

MALC fails to state a claim upon which relief can be granted under Section 2 of the Voting Rights Act because it has not pleaded any factual allegations sufficient "to raise [its] right to relief above the speculative level."  Twombly, 550 U.S. at 555.  Section 2 of the Voting Rights Act prohibits the use of a voting practice or procedure "in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color [or membership in a language minority group]." 42 U.S.C. § 1973(a). To establish a violation of Section 2, a plaintiff must show:

> based on the totality of circumstances, . . . that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

*Id.* § 1973(b).   The elements of a claim under Section 2 of the Voting Rights Act were established by the United States Supreme Court in *Thornburg v. Gingles*, 478 U.S. 30 (1986), and have been applied consistently by the Fifth Circuit:

> First, plaintiffs must satisfy, as a threshold matter, three preconditions. Specifically, the minority group must demonstrate that: (1) it is sufficiently large and geographically compact to constitute a majority in a[n additional] single-member district; (2) it is politically cohesive; and (3) the white majority votes sufficiently as a bloc to enable it-in the absence of special circumstances-usually to defeat the minority's preferred candidates. Failure to establish all three of these elements defeats a [§ 2] claim. Second, if the preconditions are proved, plaintiffs must then prove that based on the totality of the circumstances, they have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

*Fairley v. Hattiesburg*, 584 F.3d 660, 667 (5th Cir. 2009) (quoting *Sensley v. Albritton*, 385 F.3d 591, 595 (5th Cir. 2004)).   Thus to state a claim for relief under Section 2, Plaintiffs must allege facts that demonstrate the *Gingles* factors.

MALC claims that the Texas Legislature adopted the Texas House districting plan with a top to bottom population deviation of 9.9% in order to avoid drawing new Hispanic districts and to gain political advantage.   Complaint ¶ 55.   These allegations, however, are not sufficient to state a claim as MALC fails to allege any specific facts demonstrating how Defendants utilized a 9.9 % deviation by over-populating 70% of the Hispanic majority districts.   *See id.* ¶ 29.   In fact, MALC does not even identify which districts it claims Defendants allegedly overpopulated. MALC's allegations that the election practices and procedures used to apportion Texas House districts were done with the intent to disadvantage Hispanic voters are also insufficient to meet the pleading standards articulated by *Twombly* and *Iqbal*.   *Id.* ¶¶ 36-46, 54.   For instance, although MALC claims that Defendants have employed "redistricting gerrymandering techniques," it fails to plead any facts showing which minority districts within the Texas House plan were affected and how such techniques were utilized to minimize minority opportunity

districts.  Finally, MALC has not pleaded sufficient facts to establish how adhering to the Texas Constitution's whole county rule violates the Voting Rights Act and has a discriminatory purpose or effect.  *See* Complaint ¶¶ 39, 44, 45.

Accordingly, this Court should dismiss MALC's claims under Section 2 of the Voting Rights Act for failure to state a claim.

### 3.  *MALC's Challenge To The Election System For The Texas Railroad Commission Should Be Dismissed.*

MALC's complaint that the at-large election system used to elect the members of the Texas Railroad Commission violates Section 2 of the Voting Rights Act should be dismissed for failure to state a claim.  The Supreme Court has noted that at-large elections "are not *per se* violative of minority voters' rights."  *Gingles*, 478 U.S. at 48.  As part of a *prima facie* case under Section 2, a plaintiff must demonstrate the existence of a proper remedy.  *League of United Latin American Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 868-76 (5th Cir. 1993); *Nipper v. Smith*, 39 F.3d 1494, 1530-31 (11th Cir. 1994) (plurality opinion).  In assessing a plaintiff's proposed remedy, a court must look to the totality of the circumstances, weighing both the state's interest in maintaining its election system and the plaintiff's interest in the adoption of his suggested remedial plan.  *See Houston Lawyers' Ass'n v. Attorney General of Texas*, 501 U.S. 419, 426 (1991).

Here, MALC alleges that the current election scheme for the Texas Railroad Commission violates Section 2 of the Voting Rights Act because it dilutes the Hispanic and African-American vote.  Complaint ¶ 62.  MALC has failed to plead sufficient facts to demonstrate that this Court can fashion a permissible remedy in the context of the challenged system.  The Texas Railroad Commission was established by the Texas Legislature in 1891, and since 1894, the Texas Constitution has provided that the Railroad Commission "shall be composed of three

Commissioners who shall be elected by the people at a general election for State officers." TEX. CONST. art. 16, § 30. Courts have held that a state has an interest in maintaining the selection model established by its constitution for state officers because "implicit in the first *Gingles* requirement is a limitation on the ability of a federal court to abolish a particular form of government and to use its imagination to fashion a new system. Nothing in the Voting Rights Act suggests an intent on the part of Congress to permit the federal judiciary to force on the state a new model of government . . . ." *Nipper*, 39 F.3d at 1531; *see also Holder v. Hall*, 512 U.S. 874, 880 (1994) ("In a § 2 vote dilution suit, along with determining whether the *Gingles* preconditions are met and whether the totality of the circumstances supports a finding of liability, a court must find a reasonable alternative practice as a benchmark against which to measure the existing voting practice."). Because MALC has failed to plead sufficient facts to establish how its proposed election system for the Texas Railroad Commission is a permissible remedy in the context of the current benchmark, this Court should dismiss this claim.

### 4. MALC's Fourteenth Amendment Claim Should Be Dismissed.

To the extent MALC asserts a racial gerrymandering claim under the Fourteenth Amendment to the United States Constitution, this claim should be dismissed for failure to state a claim. *See* Complaint ¶¶ 46, 54. Racially gerrymandered districting schemes are "constitutionally suspect" and are subject to strict scrutiny. *Hunt v. Cromartie*, 526 U.S. 541, 546 (1999). However, a facially neutral law will only be subjected to strict scrutiny if the challenger can prove that the law was "motivated by racial purpose or object," *id*. (citing *Miller v. Johnson*, 515 U.S. 900, 913 (1995)), or if the law was "unexplainable on grounds other than race." *Id*. (citing *Shaw v. Reno*, 509 U.S. 630, 658 (1993)). Bare conclusions of unconstitutionality are not sufficient. In a case challenging redistricting legislation, a challenger

must show—using direct or circumstantial evidence, or both—that "the legislature subordinated traditional race-neutral districting principles, including but not limited to compactness, continuity, and respect for political subdivisions or communities defined by actual shared interests, to racial considerations." *Hunt*, 526 U.S. at 547 (internal citations omitted).  MALC's complaint makes no such allegations, and as a result, fails to allege facts and circumstances to state a claim of unconstitutional racial gerrymandering.

### 5.   *MALC's Fifteenth Amendment Claim Should Be Dismissed.*

This Court should dismiss MALC's Fifteenth Amendment claim as set forth in its second cause of action for failure to state a claim.  A redistricting scheme may violate the Fifteenth Amendment, at least if done with the specific purpose of depriving a racial minority group of the right to vote.  *See, e.g., City of Mobile v. Bolden*, 446 U.S. 55, 62-63 (1980) (plurality opinion); *Gomillion v. Lightfoot*, 364 U.S. 339, 346 (1960) (holding that "when a legislature singles out a readily isolated segment of a racial minority for special discriminatory treatment, it violates the Fifteenth Amendment").  To prove that a defendant acted with the requisite intent, a plaintiff must satisfy the test established in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-68 (1977).  MALC makes the incendiary allegation that Defendants used election practices and procedures with the intent to disadvantage Hispanic voters, and does not provide any factual allegations to support this conclusion.  *See* Complaint ¶ 54.  Although MALC's complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions." *Twombly*, 550 U.S. at 555.  Because its Fifteenth Amendment claim against

Defendants is not supported by any factual allegations, MALC's claim must be dismissed for failure to state a claim upon which relief can be granted. *See Iqbal*, 129 S.Ct. at 1949.[7]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant the motion to dismiss and dismiss MALC's claims with prejudice.

---

[7] To the extent MALC's Fifteenth Amendment claims relate to voter dilution, they should also be dismissed. *See, e.g., Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 334 n.3 (2000) ("W[e] have never held that vote dilution violates the Fifteenth Amendment . . . [and] we have never even 'suggested' as much.") (internal citations and quotations omitted). Nor has the Supreme Court ever found a legislative redistricting plan to run afoul of the Fifteenth Amendment. *See, e.g., Voinovich*, 507 U.S. at 159 ("W[e] have never held any legislative apportionment inconsistent with the Fifteenth Amendment."). The Fifteenth Amendment "'applies only to practices that directly affect access to the ballot.'" *Reno*, 528 U.S. at 334 n.3 (quoting *City of Mobile*, 446 U.S. at 65 (Stevens, J., concurring in judgment)).

Dated:  June 28, 2011                    Respectfully Submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

BILL COBB
Deputy Attorney General for Civil Litigation

DAVID C. MATTAX
Director of Defense Litigation

J. REED CLAY, JR.
Special Assistant and Senior Counsel
   to the Attorney General

 /s/ David Schenck
DAVID SCHENCK
Deputy Attorney General for Legal Counsel
Texas Bar No. 17736870
ANGELA V. COLMENERO
Assistant Attorney General
Texas Bar No. 24048399
P. O. Box 12548, Capitol Station
Austin, Texas 78711
Phone  No. (512) 936-1342
Fax No. (512) 936-0545

ATTORNEYS FOR DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been sent by the Court's electronic notification system on June 28, 2011, to:

> *Counsel for Plaintiffs*
> Jose Garza
> Law Office of Jose Garza
> 7414 Robin Rest Dr.
> San Antonio, Texas  78209
>
> Joaquin G. Avila
> Law Office
> P.O. Box 33687
> Seattle, Washington 98133
>
> *Counsel for Plaintiff-Intervenors*
> Luis Roberto Vera, Jr.
> Law Offices of Luis Roberto Vera, Jr. & Associates
> 1325 Riverview Towers
> 111 Soledad
> San Antonio, Texas 78205-2260

 */s/ David Schenck*                                    
DAVID SCHENCK
Deputy Attorney General for Legal Counsel